FARMERS & MERCHANTS BANK V. PETER DUNBIER.

[FILED JULY 1, 1891.]

**Checks:** A VERBAL ACCEPTANCE of a check by the drawee is valid and binding as if the acceptance was in writing.

ERROR to the district court for Polk county. Tried below before SMITH, J.

*E. P. Holmes,* and *E. M. Lamb,* for plaintiff in error, cited: *Powers v. Clarke,* 26 N. Y. Sup., 448; *Newton Wagon Co. v. Diers,* 10 Neb., 292; *Murphy v. Merry,* 8 Blackf. [Ind.], 295; *Smith v. Stevens,* 3 Ind., 332; *Johnson v. Morris,* 21 Ga., 238; *Bumford v. Purcell,* 4 Greene [Ia.], 488; *Helm v. Logan,* 4 Bibb [Ky.], 78.

*Smith & Biggs, contra,* cited: *Sturges v. Bank,* 75 Ill., 595; *Pierce v. Kittredge,* 115 Mass., 374; *Pope v. Bank,* 59 Barb. [N. Y.], 226; 2 Parsons, Cont. [7th Ed.], 9; Brandt, Suretyship, 63–5.

NORVAL, J.

This suit was brought by Peter Dunbier against the plaintiff in error upon a check drawn by J. B. Neff upon the Farmers and Merchants Bank of Shelby, in favor of Peter Dunbier, which it is alleged was accepted by the bank. Verdict and judgment for the plaintiff below in the sum of $352.25.

The bank denies that it ever accepted the check. The case turns upon the question whether the evidence establishes a valid acceptance of the check by the bank.

It appears from the record that on the 2d day of April, 1889, Peter Dunbier contracted some cattle to J. B. Neff, who tendered in payment of the cattle a sight draft drawn

by him upon Dorsey Brothers & Clifton, South Omaha, which Dunbier declined to accept. The next morning, before the cattle were delivered, Dunbier and Neff went to the Farmers and Merchants Bank of Shelby, and saw the cashier, Mr. Anel, who paid to Dunbier for Neff $1,000. For the $832 yet unpaid on the purchase price, Neff gave a check to Dunbier upon the plaintiff in error. The cashier filled out the check and handed it to Neff to sign, who after signing it returned it to Mr. Anel, the cashier, and he gave it to Mr. Dunbier.

The defendant in error testified that he then asked Mr. Anel if the check was right for $832, who replied, " Yes, sir, that check is right. I guarantee you that I pay you that in two days."

It also appears that after receiving the check, the cattle were delivered to Neff, and the delivery would not have been made had the cashier not have promised to pay the check. On the 5th day of April, 1889, the cashier paid Mr. Dunbier $500, and that the same was indorsed upon the check. The bank refuses to pay the balance.

S. L. Anel, the cashier of the bank, in his testimony states that he never agreed to pay the check, and to the same effect is the testimony of Mr. Neff, given by deposition. Mr. Anel also testified in answer to questions as follows:

Q. When did you next see this check?

A. I saw it, I think it was the next day, about three o'clock. It was either the next day or one or two days after.

Q. Who had it?

A. Peter Dunbier.

Q. Relate the circumstances?

A. He came to the bank and asked me if I had heard from Mr. Neff. I told him we had; that he had telegraphed us from South Omaha to draw a draft for $1,500 on Dorsey Bros. & Clifton, and I told Mr. Dunbier I could

pay him $500 and keep out the $1,000 I had paid him two days before.

Q. What did he say?

A. I said this is not all he owes you, will you take this $500? and he said yes; he said he would take it; that it amounted now to $1,500. He took it, indorsed it on the check, and said: "I'll sue the bank if you don't pay it right away; that Mr. Neff said we would pay him." I told him I had agreed to pay it as soon as Mr. Neff sent us the money from Omaha—the cash to pay the check off, and that $500 was all he had sent to pay on the check. I paid him that much and I told him I would pay the rest as soon as Mr. Neff sent the money.

Q. Has Mr. Neff ever sent you the money?

A. No, sir; he never sent the money.

The testimony is hopelessly irreconcilable. The plaintiff's testimony is in nearly all its material parts contradicted by two witnesses. It is obvious that Dunbier and Anel were each interested witnesses, and it cannot be successfully claimed for Neff that he was disinterested. He states in his deposition, in response to a question if he was in any way interested in the outcome of the trial, that "the interest is to me this way: If Anel pays it I would have to pay; I would not want him to lose any money out for nothing." The jury, by their verdict, under proper instructions, decided on the conflicting evidence in favor of the plaintiff below, and the testimony introduced on behalf of the bank was not of so conclusive a character as to warrant us in disturbing the verdict. We think the evidence was sufficient to justify the jury in finding that the bank verbally accepted the check and agreed to pay the same within two days, and that Dunbier was thereby induced to deliver the cattle to Neff. The agreement of the bank to pay the check was not the promise to pay the debt of another, but was an original promise, and was valid, although not in writing. The delivery of the cattle to Neff

was a sufficient consideration for the agreement. Credit was given by Dunbier to the bank, and not to Neff.

The statutes of some of the states require that the acceptance of a check should be in writing, and therefore in such states a verbal acceptance will not answer. But when, as in this state, the rule of the common law on that subject is in force, the verbal acceptance of a check by the drawee is valid and binding. (1 Parsons on Notes and Bills, 281; *Mason v. Dousay*, 35 Ill., 424; *Sturges v. Fourth Natl. Bank*, 75 Id., 595; *Jarvis v. Wilson*, 46 Conn., 90; *Spaulding v. Andrews*, 48 Pa. St., 411; *Dunavan v. Flynn*, 118 Mass., 539. For the reason stated the judgment is

AFFIRMED.

THE other judges concur.